Our next matter is Council for Responsible Nutrition v. James Councilor Wise? And you deserve two minutes for rebuttal. Yes, Your Honor. You may proceed when you're ready. May it please the Court. My name is Tamara Wise and I represent the Council for Responsible Nutrition, or CRN, the appellant in this statute. This appeal concerns a constitutional challenge to GPL 39100, a recently enacted New York statute that bans the sale of a wide range of dietary supplement products based solely on the speech associated with those products. Is that right or is it just says that they should be age-restricted? Your Honor, the statute defines the prohibition as the sale of a product and that product is defined exclusively by speech. That product is defined as those labels marketed or otherwise represented. But your clients can say whatever they want, right? Their speech is not restricted. Well, that's just one way of approaching a First Amendment problem and that's what considered. That's the site from the fair case. But that's not the only way to implicate the First Amendment. And here, the First Amendment is implicated because this statute is triggered exclusively by the speech associated with the product. And that's what this Court held in Centra, that the Supreme Court's holding in Holder, and courts... But all of those cases, yes, they say is the regulation triggered by the content of the to regulate the speech. And we don't have that here. It's hard to find something exactly parallel, although the fair case seems closest because there, although not on its face, regulation under that law would be triggered by the speech of the school. So if the school send out an email saying, we're hosting an employer, that triggers a requirement to send out the same email with respect to military recruiters. So you have a triggering, but the court there said it's a regulation of conduct, not speech. And that, I think, is the closest analog to this. Your Honor, the fair case was a compelled speech case. There, the Supreme Court considered whether forcing the law schools to host non-military recruiters, military recruiters on the same term that they hosted military recruiters, was that some kind of compelling of the law schools to make certain speech. And they found that the... So you're not making a compelled speech argument? Well, one of our grounds for First Amendment here is compelled speech, but the primary argument on First Amendment that we're making is exactly the way that the court found in which is the definition of the product. There is no triggering violation. There is no... But do you agree with me or tell me if you see it differently? That's true. And those cases involve regulation of speech. I think those cases facially regulate conduct that is triggered by certain speech. And you can put the same thing in parentheses here. But here, what's facially being regulated is the sale of the product. But what triggers the regulation is speech. And that's distinct from all the other cases that the district court relied on where there is some kind of incidental downstream effect on speech. The law regulates something that will then have an effect on people's ability to make speech. You don't have that here. You could say whatever you want. Right. That's a different kind of First Amendment violation. Or a First Amendment violation. In those incidental speech cases, there was a question about whether there was a First Amendment violation. Here, the speech triggers the prohibition. Without the speech, there is no prohibition. And this is content-based burdening of speech. Here, the speech of a certain type of content, you have marketing that is for the purpose of weight loss or muscle building. That is burdened in a way that marketing for any other purpose is not burdened. And this court in Cornelio and the Supreme Court in Simon and Schuster found that that is an obvious First Amendment infraction that warrants constitutional scrutiny. Can you address irreparable harm and the balancing of the equities and public interests? Sure, Your Honor. So in a First Amendment case, the dominant, if not dispositive, inquiry is likelihood of success on the merits. That was this court's determination in the Trippett case. And here we have— I know, but I asked you about irreparable harm. So— What's the irreparable harm? The irreparable harm is a constitutional violation. And courts have held that a constitutional violation is a, per se, finding of irreparable harm. And to the extent that the court below relied on cases in, you know, IT context or consumer fraud context, that the court in Trippett v. specifically found that relying on those types of cases is an advocate where you're talking about the existence of a constitutional violation. And what about the balancing of the public interest? You've got the desire to protect minors from potentially dangerous products. The— Versus, you know, this—assuming there is an infringement on the First Amendment rights, what seems like a relatively modest one because they can still speak, they just have to limit the sales to those 18 and above. Well, the, you know, the First Amendment inquiry here called for a central hunting text, which requires a showing that there's a material and direct advancement of a government interest. And here, our position is that there is no showing, there's no substantiation in the  And so absent that direct and material advancement of the substantial government interest, the government does not have—there is no public interest that outweighs— The record doesn't show that there is a danger presented when younger folks take these diet pills and products. Your Honor, respectfully, the record does not reflect that at all. The record does not reflect that there is any relationship between the way that a product is marketed and any harm to children. And the— Okay, I'm sorry. I'm going to ask just a slightly different question. Judge Chin asked whether or not it was reducing the consumption and whether or not that was harming folks. You used the connection between advertising and usage. What if we were just to say that the government interest was reducing the use of dietary supplements? Does that affect our analysis under central Hudson? It does, Your Honor, because which dietary supplements are we talking about? Are we talking about dietary supplements that have harmful ingredients? Well, if that's the problem, then restrict based on harmful ingredients. And that's what the narrow tailoring requirement of central Hudson requires courts to look at for purposes of constitutionality. If there's a way to get to the harm without sacrificing speech, that is where the narrow tailoring requirement comes in. And here the Act is not narrowly tailored in that way. It does not—it burdens far more speech than is necessary to achieve a government interest. There is an alternative. The alternative is to regulate based on what's in the product rather than what's said about the product. And without looking at the speech associated with the product, if you could say, you know, X, Y, and Z ingredients are bad for minors, regulate on that basis. And in fact, the New York legislature did think about doing that. So, yeah, and it's vetoed on the premise that you can't keep up with an ever-changing list. And so it wouldn't be able to effectuate the means that the legislature was aiming to effectuate. Why isn't that a response to the question of whether there's an available alternative means? Your Honor, that's because the legislature at that point just broke their hand and went straight to a speech-based regulation. There was no intent to work within the rubric of an ingredient-based regulation, which would not burden speech. There is an alternative. And the law is clear that you can't sacrifice speech for efficiency. You can't sacrifice speech just because there's an easier way to do something. And here, the cost of the jump straight to this regulation is the effect on speech. And that's unconstitutional. Thank you so much. We'll hear from you on the phone. Thank you. Good morning, Your Honor. I'm from Anthony's Court. Graced out by the ability of the New York Attorney General. This court should affirm the denial of a preliminary injunction against New York's law, which prohibits the sale to minors of diet pills and supplements that are intended to aid weight loss and muscle gain. I'd like to start by addressing CRM's likelihood of success on a commercial speech challenge. The district court correctly concluded that CRM is unlikely to succeed on this claim for two independent reasons. First, the challenge sales restriction does not complicate the First Amendment. And second, in any event, it amply clears the central housing review. So first, the challenge law age-restricts the sale of supplements that are intended to aid weight loss and muscle building and permits the AG and courts to examine a product's labeling and marketing only in service of identifying a product's intended use so that it can be classified. The law does not restrict, prohibit, or dictate what manufacturers and retailers can say about these products. So is there a meaningful distinction between regulating speech and imposing a sales restriction on the basis of certain speech? I think there is, Your Honor. Because in this case, what the law does is that it clearly restricts a class of products that are intended to aid weight loss and muscle building, and labeling and marketing is only one of several amnesia that the AG and courts shall look to in order to determine what the intended use of a product is. This examination of speech only in aid of categorizing and subjecting a product to a regulatory regime does not implicate the First Amendment. And in fact, consumer products widely are defined and regulated according to their intended use. Drugs are a prime example. Under the FDCA, if a manufacturer claims that a product is intended to mitigate or to cure a disease, then it qualifies as a drug, and that triggers a whole host of regulatory requirements, for example, FDA preapproval. But if a manufacturer does not make or omit such a claim, then that product would be exempt from these types of regulations. But it really would be a stretch to say that the FDCA's definition of a drug and the FDA's regulatory regime surrounding drugs really is a content-based burden on manufacturers' right to make specific types of claims. So the shift to whether it's a content-based burden that you made there, I guess, I mean, we do have language in cases which seems to say if the content of speech triggers application of a regulation that we're in Central Hudson, right? At one level, you sort of split one way, and it looks like that. What's your response to that? So I think in this case, the trigger is not speech. It's certainly not the sole trigger here. It's really a product intended use. It's either labeling or marketing. It's really only in service of identifying what the product is intended to do. And I really just urge the court to look to subsection 6 of the statute. It makes clear that labeling and marketing is only one of several factors that the court shall consider in determining whether a product's purpose is for achieving weight loss or muscle gain. The court also has to look to a product's composition to see if there are common weight loss or muscle-building ingredients. The court can also look to retail placement, how these products are— So it can look to all those things, but those are ors in the statute, not ands, right? Respectfully, Your Honor, the statute says that the court shall consider the following factors, but it's not limited to doing so. So these are all considerations that the court shall undertake. But can marketing alone trigger regulation under the provision? I think that's unlikely, Your Honor, because the statute directs you to consider all the factors. And so I think to the extent that the court is considering one hypothetical that CRI has brought up, which is that an identical product will be treated arbitrarily or differently merely because it contains or has a claim, we just simply don't think that that's likely under the statute because the court also has to consider whether there are these common ingredients. The court also has to consider how these products are placed in a retail location or grouped on a website. And I think all of these considerations will help safeguard against any sort of arbitrary application and will help focus in on the category of products that the state is seeking to protect minors from here. And that's products that promote weight loss and muscle gain and are associated with a whole host of negative outcomes. But if there are no further questions regarding conduct, I just have to decide that the court does not have to agree with us on this step in order to find that the statute is constitutional because it amply clears the central context. There are three disputed factors here, Your Honors, and really the state clearly satisfies all three of them. So first, the substantial state interest here is in safeguarding public health and that of minors in particular. And we think that the record is amply clear that the consumption of this category of products, which are products to promote weight loss or muscle gain... So does your burden require you to provide evidence that the supplements cause eating disorders? No, I don't think that a direct causality is necessary. I think what the state has to show is that the consumption of these products can reveal real harms to minors, both bodily harms such as emergency room visits or damage to organs, and also are associated with other body image harm issues such as eating disorders. And I think that the record amply shows that here. We both have scientific studies that show that the consumption of this category of products is an unhealthy weight control behavior that can serve as a gateway to further escalating behaviors that are associated with eating disorders. And we also have a lot of anecdotal evidence. We're in the second factor, which I understood our cases to say that it's an asserted interest. And so you've asserted public health as an interest. And then I think once you move into the kinds of points you're making there, those sound more like means ends type of analysis that we get to in three and four. Do you disagree with that? No, I think that's right. And here, the third and fourth factor really look to the magnitude of the harm and the state's chosen choice in addressing that harm. Can I ask you on tailoring? So, it's interesting to think about the tailoring analysis in the context of where the state attempted to do this a different way, and that was vetoed. Isn't that, isn't, I mean, it is clear that if one could keep sort of a running list, that that wouldn't restrict speech in the way that's being complained of here and would effectuate what the state's trying to do, right? So, I think that here the legislature has determined that focusing on ingredients only is unlikely to adequately capture this universe of products that's harmful. Well, that wasn't, no, the legislature did that, and then the governor said that that won't be effective. Right, that was the first attempt at this. The legislature thought we could do this effectively through a list of ingredients. That's correct. And I think on giving a chance to reconsider it, the legislature found that this choice that they'd now chosen to pursue would be more effective or that the alternative, its previous version, actually would not have been very adequate at addressing the issue, because the ingredients only list would be under-inclusive. For one of the reasons that you mentioned, Judge Steven, it would constantly be an evolving list and have to be updated, but also because there are studies that show that weight loss products are notorious for having unlisted dangerous ingredients. So, focusing on ingredients only is unlikely to capture the universe of products, whereas what the statute now does is allow courts to look to ingredients and labeling and marketing as holistic indicia of what a product-containing use is. And we think that this approach is more surgical, it's more targeted, and will more effectively safeguard minors from using the cost of harmful products. If the court has no further questions, we urge you to defer. Thank you. I'm just going to address a couple of points that were raised by the Attorney General. So, the first is this continued reference to this category of products. There is nothing inherent in the categorization of dietary supplements for the purpose of achieving weight loss and muscle building. There's nothing inherent to that product. There's no specific type of ingredient, there's no specific composition, the way that you would have with alcohol or tobacco, other things that are regulated for their danger to minors. And that's why the legislation— There is a list of ingredients included in the statute. Does that not—doesn't answer that question? If that's the only list of ingredients that's a problem, then the statute should just stick with those list of ingredients and not then start to burden the—in terms of the marketing of the product. And here, the suggestion that the marketing and labeling and representations associated with the product are just one indicia of what's regulated by this product is simply not true. Because the way that the statute is written, the way that the legislature chose to write it, is to define the regulated product exclusively by calling it— But then when somebody determines whether or not it's been labeled, at least a couple of the provisions have to do with specific product composition, right? Well, the initial consideration, the sub-A, one sub-A of the statute says that the product that is being regulated, the product that is banned for sale to minors, is one that is labeled, marketed, or otherwise represented for the purpose of achieving weight loss or muscle building. That is a fundamental first consideration. That is the definition of the product being regulated here. And the last thing I would say is that there's been a suggestion that you don't need a direct causal link between the means and the harm, and that's just not true under the central Hudson test. For the third prong, the Supreme Court, in Rubin and in 44 Lickermark, made it clear that you have to show that what you are regulating will actually, by evidentiary or right to the fact, will actually solve the problem the way that you are regulating it. And so the suggestion that there's a certain kind of product that is more likely to harm minors without any direct evidence at calling a product based on its marketing, saying, you know, just because it's marketed a certain way, it's more likely to harm children, there is zero evidence in the record that you can look to a product simply based on its marketing and show that it has a harmful effect on minors. Can I just, just on the basic view of the burden, you can market, both a retailer and a manufacturer can market any of these products to children, correct? That's right. And so, I mean, I have two responses to that, Erica. The first is they can market it, but it is, the statute creates a choice that the First Amendment does not tolerate under Arizona free speech, the Supreme Court case. You're making the choice between making the speech that you want to make with the burden that is being imposed by the statute or not making the speech at all. There is a burden associated with making that speech. We're allowed to make, you know, the manufacturer can make the claims that it wants, but that speech with a certain message, with a certain content is being burdened, and the choice that a party is put in as a result of that regulation, that under, you know, these very Supreme Court cases, that's clearly a First Amendment problem. And the last thing I would address about marketing, if the marketing is the problem, then restricting the sale to minors is not going to solve the problem. If they have access to marketing... Well, marketing is not the problem. That's why it doesn't prohibit... Well, if marketing is not the problem, then... I mean, if marketing were the problem, presumably there would be a prohibition on marketing. That's correct, Your Honor, and that's the problem with when the legislature pivoted to a purely speech-based regulation, it said that this act takes a new approach focused on the way products are marketed regardless of their ingredients. So we have to take the legislature for what it said. Thank you so much. We'll take the matter under adjustment.